1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   PETER LYNN GALLOWAY,

11            Petitioner,              No. 2:11-cv-1464 KJM DAD P

12        vs.

13   R. H. TRIMBLE, Warden,           ORDER AND

14            Respondent.             FINDINGS & RECOMMENDATIONS

15   _____/

16            Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas

17   corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a judgment of conviction entered

18   against him on December 18, 2008 in the Sacramento County Superior Court for second degree

19   robbery with findings that he had previously suffered one prior "strike" conviction, served two

20   prior prison terms, and suffered one "serious or violent" felony prior conviction.  He seeks

21   federal habeas relief, claiming that his trial counsel rendered ineffective assistance in failing to

22   accurately convey to him the terms of a plea offer.  Petitioner also seeks to expand the record in

23   this federal habeas action with several transcripts and letters.  Upon careful consideration of the

24   record and the applicable law, the undersigned will deny petitioner's request to expand the record

25   and recommend that his application for habeas corpus relief be denied.

26   /////

                                            1

**I. Factual and Procedural Background**

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal[1], the California Court of Appeal for the Third Appellate District provided the following factual and procedural summary:

> **PROCEDURE**
>
> Defendant was charged by information with one count of second degree robbery. (Pen. Code, § 211.) The information also alleged that defendant had two prior strikes (robbery and kidnapping) (Pen. Code, §§ 667, 1170.12) and two prior prison terms for other felonies (false impersonation and bank fraud) (Pen. Code, § 667.5, subd. (b)). Finally, the information alleged that the prior robbery was a serious felony within the meaning of Penal Code section 667, subdivision (a).
>
> Before trial, the court granted the prosecutor's motion to strike the kidnapping prior.
>
> A jury found defendant guilty of second degree robbery, and the court found the prior conviction and prison term allegations true.
>
> The trial court imposed the upper term of five years in prison for the second degree robbery, doubled to 10 years because of the strike. The court added five years for the prior serious felony and one year each for the prior prison terms, all consecutive. The total state prison term imposed was 17 years.
>
> **FACTS**
>
> Defendant committed the crime at Nordstrom Rack in Sacramento on June 21, 2007. The two main sources of evidence against defendant were (1) two witnesses to the crime and (2) a surveillance video.
>
> **Testimony of Witnesses**
>
> Heather Djuric was acting as store manager on the evening of the crime. She was assisting a customer with a refund at a cash register near the front of the store. The customer gave Djuric her passport, from which Djuric entered information into the register. The cash register opened, and Djuric began taking cash out of the drawer. As she did so, defendant collided with her and she was knocked to the ground, about four or five feet from the register.

---

[1] Notice of Lodging Documents on September 19, 2012 (Doc. No. 35), Ex. A (hereinafter Opinion).

She landed on a divider between registers, resulting in injured ribs and a shoulder tear.  In a daze, Djuric thought at first that another employee may have tripped and fallen into her.

Joshua Meredith, the store's loss prevention officer, saw defendant enter the cashiers' area, shove Djuric, and take money from the cash register.  After a struggle, Meredith and others detained defendant until police arrived.

When interviewed by a sheriff's deputy immediately after the incident, Djuric said that she had been grabbed then shoved.

**Surveillance Video**

The surveillance video capturing the incident is about 70 seconds long.  The view is of most of the cashiers' area, where there are four cash registers.  Some of the immediate area outside of the cashiers' area is also visible.  The camera looks down onto the cashiers' area, at an angle.

Inside the cashiers' area are two employees assisting customers, who are outside the cashiers' area.  As the video begins, the employee on the left side of the image (identified at trial as Djuric) is typing on the keyboard of the cash register, while the customer she is assisting is looking at a shoe on the counter.

Fifteen seconds into the video, defendant appears, walking past the cashiers' area and talking on a cell phone.  He walks around a display of clothing, then returns to the area just outside the cashiers' area, behind Djuric's back.  Still talking on the cell phone, defendant bends over, looking in the direction of Djuric for about 15 seconds.

Fifty seconds into the video, Djuric hands something to the customer as the cash register opens.  As soon as the cash register opens, defendant, still outside the cashiers' area, walks toward the camera.  He disappears from the camera image, which does not include one end of the cashiers' area.

Fifty-five seconds into the video, defendant appears inside the cashiers' area where Djuric is taking cash out of the register.  Much larger than Djuric, defendant rushes in and, in one motion, knocks Djuric away from the cash register with his right forearm and grabs for cash in the register with both hands.  Djuric crashes to the ground with considerable force, several feet from the register.  The cash she has in her hand ends up on the floor behind her.

Sixty seconds into the video, defendant leaves the cashiers' area with cash from the register in his hands.

(Opinion at 6-9.)

3

1    On June 29, 2010, the California Court of Appeal affirmed petitioner's judgment

2  of conviction.  (Doc. 35.)  Petitioner did not file a petition for review in the California Supreme

3  Court.

4    As described in more detail below, petitioner raised the ineffective assistance of

5  counsel claim contained in the petition before this court in habeas petitions filed in the

6  Sacramento County Superior Court, the California Court of Appeal, and the California Supreme

7  Court.  (Resp't's Lod. Docs. 4, 6, 8.)  The Sacramento County Superior Court denied petitioner's

8  habeas petition in a reasoned decision on the merits of petitioner's claims.  (Resp't's Lod. Doc.

9  5.)  The California Court of Appeal and California Supreme Court summarily denied the habeas

10  petitions filed by petitioner in those courts.  (Resp't's Lod. Docs. 7, 9.)

11    On May 26, 2011, petitioner commenced this action by filing a federal petition for

12  writ of habeas corpus.  In that petition, petitioner asserted three claims for federal habeas relief:

13  (1) ineffective assistance of trial counsel; (2) a due process violation; and (3) ineffective

14  assistance of appellate counsel.  (Doc. 1 at 5-6.)  After respondent filed a motion to dismiss the

15  petition for failure to exhaust state court remedies with respect to claims (2) and (3), petitioner

16  filed an amended petition, raising the sole claim that his trial counsel rendered ineffective

17  assistance in failing to accurately convey to petitioner a plea offer that was made to him.  (Doc.

18  24.)

19  **II.  Analysis**

20    A.  <u>**Standards of Review Applicable to Habeas Corpus Claims**</u>

21    An application for a writ of habeas corpus by a person in custody under a

22  judgment of a state court can be granted only for violations of the Constitution or laws of the

23  United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the

24  interpretation or application of state law.  <u>See</u> <u>Wilson v. Corcoran</u>, 562 U.S.___, ___, 131 S. Ct.

25  13, 16 (2010); <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991); <u>Park v. California</u>, 202 F.3d 1146,

26  1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the state court decision. Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). Nonetheless, "circuit court precedent may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[2] Lockyer v. Andrade, 538 U.S. 63, 75 (2003); Williams, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ

---

[2] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." Stanley, 633 F.3d at 859 (quoting Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)).

simply because that court concludes in its independent judgment that the relevant state-court

decision applied clearly established federal law erroneously or incorrectly.  Rather, that

application must also be unreasonable." Williams, 529 U.S. at 412.  See also Schriro v.

Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal

habeas court, in its independent review of the legal question, is left with a 'firm conviction' that

the state court was 'erroneous.'").  "A state court's determination that a claim lacks merit

precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of

the state court's decision." Harrington v. Richter, 562 U.S.___, ___,131 S. Ct. 770, 786 (2011)

(quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  Accordingly, "[a]s a condition for

obtaining habeas corpus from a federal court, a state prisoner must show that the state court's

ruling on the claim being presented in federal court was so lacking in justification that there was

an error well understood and comprehended in existing law beyond any possibility for fairminded

disagreement." Harrington,131 S. Ct. at 786-87.

        If the state court's decision does not meet the criteria set forth in § 2254(d), a

reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v.

Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th

Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because

of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by

considering de novo the constitutional issues raised.").

        The court looks to the last reasoned state court decision as the basis for the state

court judgment.  Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir.

2004).  If the last reasoned state court decision adopts or substantially incorporates the reasoning

from a previous state court decision, this court may consider both decisions to ascertain the

reasoning of the last decision.  Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en

banc).  "When a federal claim has been presented to a state court and the state court has denied

relief, it may be presumed that the state court adjudicated the claim on the merits in the absence

of any indication or state-law procedural principles to the contrary." Harrington, 131 S. Ct. at

784-85.  This presumption may be overcome by a showing "there is reason to think some other

explanation for the state court's decision is more likely." Id. at 785 (citing Ylst v. Nunnemaker,

501 U.S. 797, 803 (1991)).  Where the state court reaches a decision on the merits but provides

no reasoning to support its conclusion, a federal habeas court independently reviews the record to

determine whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860;

Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).   "Independent review of the record is

not de novo review of the constitutional issue, but rather, the only method by which we can

determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at

853.  Where no reasoned decision is available, the habeas petitioner still has the burden of

"showing there was no reasonable basis for the state court to deny relief." Harrington, 131 S. Ct.

at 784.

When it is clear, however, that a state court has not reached the merits of a

petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a

federal habeas court must review the claim de novo. Stanley, 633 F.3d at 860; Reynoso v.

Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir.

2003).[3]

## B. Petitioner's Claim of Ineffective Assistance of Trial Counsel

### 1. Background

Petitioner claims that his trial counsel, James Warden, rendered ineffective

assistance in failing to adequately and accurately convey the terms of the plea offer that was

made.  (Doc. 24 at 6.)  Petitioner explains that the prosecutor conveyed a plea offer to Mr.

Warden, although he does not specify the date the offer was allegedly extended.  (Id.)  Mr.

_____

[3]  The United States Supreme Court has recently granted certiorari in a case apparently to
consider this issue.  See Williams v. Cavazos, 646 F.3d 626, 639-41 (9th Cir. 2011), cert. granted
in part, ___U.S.___, 132 S. Ct. 1088 (2012).

1   Warden subsequently told petitioner that, pursuant to the offer, petitioner would serve four years

2   in prison in exchange for a plea of guilty to second degree robbery and an admission that he had

3   suffered a prior strike.  (Doc. 24 at 6.)  Petitioner asserts, however, that, pursuant to California

4   Penal Code § 667(a), if he pled guilty to robbery, a serious felony, he would receive a mandatory

5   five year sentence enhancement, making a four year plea offer impossible to carry out under

6   California law.[4]  Therefore, petitioner assumes that his trial counsel was mistaken, and that the

7   plea offer must have called for petitioner to plead guilty to "the lessor included offense of grand

8   theft person."  (Id.)  Petitioner surmises that his attorney, Warden, "formulated what an offer of

9   '4' year's (sic) was in his own mind, with out (sic) seeing the correct term's (sic) from (the

10  prosecutor)."  (Id.)  Petitioner argues that the prosecutor's plea offer, as explained to him by his

11  trial counsel, "makes assumption that a Judge would put on blinders to the law and allow an

12  illegal sentence," and "over Look's (sic) the fact and assums (sic) that the California Department

13  of Correction's (sic) would also over Look (sic) an illegal sentence."  (Id. at 35-36.)  Petitioner

14  also complains that his trial counsel failed to provide him with an adequate opportunity to view

15  the surveillance videotape of his commission of the crime before accepting any plea offer.  In this

16  regard, petitioner states, "I kept asking to see the video again.  He kept putting me off until such a

17  time the offer of ('4' year's (sic)) was no longer in offer (sic)."  (Id. at 25.)

18          Petitioner has filed his own declaration with this court in support of his claim of

19  ineffective assistance of trial counsel.  Therein, petitioner declares that he believes the above-

20

21          [4]  California Penal Code § 667(a)(1) provides:

22
             In compliance with subdivision (b) of Section 1385, any person
23           convicted of a serious felony who previously has been convicted of
             a serious felony in this state or of any offense committed in another
24           jurisdiction which includes all of the elements of any serious
             felony, shall receive, in addition to the sentence imposed by the
25           court for the present offense, a five-year enhancement for each
             such prior conviction on charges brought and tried separately. The
26           terms of the present offense and each enhancement shall run
             consecutively.

8

1  described plea offer of a four-year sentence was extended to him through his attorney in July or

2  August of 2007.  (Id. at 31.)  Petitioner explains that at his arraignment on June 27, 2007, and

3  also at a subsequent hearing on July 9, 2007, he asked the prosecutor "What is the DA's offer?"

4  (Id. at 32.)  According to petitioner, the prosecutor responded on both occasions that petitioner

5  would have to wait for an answer until he was assigned an attorney.  (Id.)  After attorney Warden

6  was appointed as petitioner's trial counsel, petitioner asked him to inquire about a possible plea

7  offer.  (Id.)  In confusing fashion petitioner declares that at that point, attorney Warden spoke to

8  the prosecutor, who,

> made an offer of (4) four years prison for "grand theft persons"
> mid-term of (2) years plea to the plea of a prior strike - which
> would double the two year's (sic) to four year's (sic).  With the
> instant offense not being a serious or violent offense - thereby not
> being made subject to a maximum sentence of (5) year's for the
> charge of 2nd degree robbery or being subject to an additional
> "strike" which under California's 3 Strike Law - would make me a
> candidate to be "struck-out" with any subsequent wobbler - at the
> discretion of the DA; - so a "robbery" I definitely didn't want.

14  (Id. at 32-33.)  Petitioner argues that he suffered prejudice from his trial counsel's actions, for the

15  following reasons:

> Causing me to be in "Jeopardy" of receiving a conviction of an
> (sic) "violent felony" under California law a "strike" which carries
> numerous collateral consequences in any subsequent conviction
> especially in my case already having "one" strike prior, would put
> me in the most perilous position as haveing (sic) only
> one strike;  It also placed me in Jeopardy of receiving the seventeen
> year sentence to prison as opposed to a conviction for "grand theft"
> a non strikeable (sic) offense and a four year prison sentence,
> which would have been completed by now."

21  (Id. at 36.)

22         Petitioner informs the court that had he received an accurate explanation of the

23  plea offer from his attorney Warden, he would have accepted it.  (Id. at 37.)  He further argues

24  that "[r]easonable professionalism on behalf of Mr. Warden's representation of me, Peter

25  Galloway, would have required him to know any and all terms and consequences of an offered

26  plea . . . ."  (Id.)

9

1   Petitioner explains that at a hearing on his <u>Marsden</u>[5] motion for substitute counsel,

2   which took place after this plea offer had allegedly been extended to him, his trial counsel used

3   the word "assumed" to describe his understanding of certain terms of the offer.  (<u>Id.</u> at 33.)

4   Petitioner argues that this indicates his trial counsel had not adequately investigated the terms of

5   the plea offer.  (<u>Id.</u>)   He states that his counsel's uncertainty as to the exact terms of the plea

6   offer caused him to delay accepting the offer because he wanted to have an accurate

7   understanding of the terms before making that decision.  (<u>Id.</u>)  Petitioner explains that he wanted

8   to avoid the consequences of pleading guilty to a charge which would bring him within the terms

9   of California Penal Code § 667(a)'s sentence enhancement provision and which would also

10  constitute a "strike."   In his traverse, petitioner alleges that while he was "eager to [accept] a plea

11  offer," he did not want to plead guilty to another strike.  (Doc. No. 31 at 4.)

12   Petitioner has submitted to this court a copy of the transcript of his <u>Marsden</u>

13  hearing held on November 7, 2007.  (Doc. 24 at 40-49.)  The portions of that hearing relevant to

14  petitioner's present ineffective assistance of counsel claim are the following.  Early in the

15  <u>Marsden</u> proceedings, petitioner told the court that his trial counsel had informed him "it was a

16  two year deal on the table, and then we were pressured to either take the deal or the deal would

17  be put off the table and we're going to go to trial."  (<u>Id.</u> at 41-42.)  Petitioner explained that he

18  wanted his trial counsel to bring a <u>Romero</u>[6] motion to strike one of the prior strike allegations

19  against him.  (<u>Id.</u> at 41-43.)  However, according to petitioner, his counsel failed to file the

20  <u>Romero</u> motion before the plea offer was made which included the strike allegation.  (<u>Id.</u> at 43.)

21  At another point in the proceedings, petitioner's trial counsel stated that he believed the "crux of

22  this issue between Mr. Galloway and I is when to do the <u>Romero</u> motion."  (<u>Id.</u> at 44.)

23  Petitioner's trial counsel further stated:

24

25   [5] <u>See</u> <u>People v. Marsden</u>, 2 Cal.3d 118 (1970).

26   [6] <u>See</u> <u>People v. Superior Court (Romero)</u>, 13 Cal.4th 497 (1996).

10

1      The way this offer was set up was it was a low term for the robbery.

2

3      I reviewed the facts of the case, and I thought it was, given the record, and given the facts of the case, and I saw the video, and I reviewed the video with him of what happened, I felt that that was

4      an appropriate offer.

5      I explained to him that if he pushes it, continues to push it, the offer could be, could get worse, could be taken off the table, could

6      get worse.

7      My thought was, get the offer in the bag.

8      There was no mention to me of a stipulated agreement to this offer, so I always had assumed it to be a lid.  And my plan, and I

9      discussed this plan with Mr Galloway, was to accept the offer and have a Romero motion at sentencing, which I believe is appropriate

10      to do.

11 (Doc. 24 at 44-45.)  Later during that Marsden hearing, the trial court inquired of attorney

12 Warden, "what was the offer to resolve the case, low term, two years, doubled?"  (Id. at 47.)

13 Counsel responded, "yes."  (Id.)

14      In essence, petitioner appears to be claiming in these federal habeas proceedings

15 that his trial counsel failed to understand, or failed to ascertain, the correct and accurate terms of

16 the plea agreement being offered by the prosecutor, and therefore mistakenly conveyed to

17 petitioner a plea offer that he was not willing to accept because it involved pleading guilty to

18 robbery (another strike) and potentially subjecting himself to a five year sentence enhancement

19 under California Penal Code § 667(a).  Petitioner argues that if his trial counsel had accurately

20 conveyed the actual plea offer, which did not involve petitioner pleading guilty to robbery, he

21 would have accepted it.  Petitioner also claims that trial counsel's failure to show him the entire

22 surveillance videotape provided to the defense in discovery caused him to delay his decision

23 whether to accept the prosecutor's plea offer until it was too late and had expired.

24      **2.  State Court Decisions on Petitioner's Ineffective Assistance Claim**

25      As explained above, petitioner first collaterally challenged his judgment of

26 conviction in a petition for writ of habeas corpus he filed in the Sacramento County Superior

1   Court.  Therein, he claimed that his trial counsel rendered ineffective assistance in conveying a

2   plea offer to him without allowing him an opportunity to review the entire surveillance videotape

3   provided in discovery so that he could make an informed decision whether to accept that plea

4   offer.  (Resp't's Lod. Doc. 4 at consecutive p. 3.)  Petitioner claimed that if his counsel had

5   allowed him the opportunity to view the entire videotape, he would have accepted the plea offer.

6   (Id.)  Petitioner also claimed that, while his trial counsel told him the plea offer included a four

7   year prison term sentence in exchange for his plea of guilty to robbery, a possible "strike," his

8   trial counsel must have been mistaken as to the actual terms of the offer because under California

9   law petitioner would have received nine years in prison if he had pled guilty to the robbery.  (Id.

10  at 4.)  Petitioner argued that the offer must have involved his plea of guilty to "a lessor included

11  offense of robbery - to wit - grand theft persons."  (Id.)  In that state petition he contended that if

12  his trial counsel had accurately explained the plea offer that was being made to him, he would

13  have accepted it.  (Id.)  Finally, petitioner claimed that his trial counsel incorrectly informed him

14  that his "risk of exposure" was 10 years in state prison instead of the 17 year sentence that he

15  ultimately received following trial.  (Id. at 5.)  He asserted there that if he had been informed by

16  his attorney that he could receive a 17 year sentence, he would have accepted the prosecution's

17  plea offer for a 4 year prison term.  (Id.)

18          The Sacramento County Superior Court rejected all of these arguments in denying

19  the habeas petition, reasoning as follows:

20          Petitioner challenges the judgment in Sacramento County Superior
        Court Case No. 07F06248, claiming ineffective assistance of
21      counsel in depriving him of a favorable offered plea bargain of 4
        years.  He claims that counsel informed him of an offer for a plea
22      to second degree robbery at the low term, doubled by a "strike
        prior" to four years, and that this would give him a second "strike"
23      for the future.  He claims that he asked the counsel to show him the
        video in evidence to determine whether or not he should accept the
24      offer, and that counsel began to show him the video but had no
        time to show him the entire video, then never returned to show the
25      entire video.  He claims that had he seen the entire video, he would
        have accepted the plea offer of four years.  He admits that the plea
26      bargain could not have been for a plea to robbery because a Penal

12

Code § 667(a) enhancement was alleged, meaning the bargain could not have been for less than nine years if meant as a plea to robbery, therefore the bargain must have been to grand theft of the person doubled by the "strike" for the purported four-year offer, which he claims he would have immediately accepted. He also claims that counsel told him that his risk of exposure was only 10 years when in reality it was 17 years, and if he had known that he would have accepted the plea offer.

The court's underlying file for Case No. 07F06248 shows that petitioner was initially charged with second degree robbery and a "strike prior," without any Penal Code § 667(a) enhancement yet alleged, in a criminal complaint filed on June 26, 2007. Petitioner made various court appearances but had not entered a plea, but was scheduled for a plea hearing on November 7, 2007, at which time the court received and filed a written motion by petitioner himself for substitution of counsel, alleging that his counsel had "failed to aggressively negotiate with DA." The minute order for November 7, 2007 indicates that the court treated the motion as a motion under People v. Marsden (1970) 2 Cal.3d 118, held a hearing, and denied the motion. The next day, November 8, 2007, petitioner made a self-representation motion under Faretta v. California (1975) 422 U.S. 806, which was granted; counsel was relieved from representing petitioner. Petitioner continued to represent himself, and on December 19, 2007, the court ordered his investigator to give a videotape to petitioner and that the jail allow him to view it. Petitioner again continued to represent himself, including at the preliminary hearing, which was held on January 2, 2008. At the preliminary hearing, officer testimony established that someone had entered a department store, pushed a clerk away from the cash register there, grabbed some money from the register, and had attempted to leave the store; someone was detained as the suspect, and a witness who saw the robbery identified the detained person as petitioner; the witness also stated that he saw that petitioner had a clenched fist with money in it. At the preliminary hearing, petitioner argued only that the robbery had not been completed and thus could not be robbery, and presented no evidence on his behalf; he was held to answer, requested the appointment of counsel, and had counsel appointed.

Petitioner gives no time frame as to when the purported plea offer was made. However, he alleges that he had not yet seen the videotape when the offer was made to him. The court's underlying file, however, as noted above, indicates that early on, petitioner complained to the court that his counsel was not negotiating with the district attorney, giving rise to the influence (sic) that he was complaining that his counsel was not trying to obtain a plea bargain for him and that none was then on the table, at which time petitioner chose to instead self-represent and obtain a viewing of a videotape, inferably the videotape to which he refers in his habeas petition. The court then ordered that petitioner be given a viewing

13

of the videotape, still at a time when petitioner was self-representing.  Thereafter, the preliminary hearing was held, and neither the district attorney nor petitioner introduced the videotape into evidence, but it was clear that there was going to be overwhelming evidence of petitioner's guilt, based on his being caught redhanded at the scene with the stolen money in hand and eyewitness identification of him.  As petitioner was then fully aware of the evidence against him, and presumably had already viewed the videotape, any plea bargain that might have been offered to him thereafter would have been rejected by him with full knowledge of the evidence against him.

To summarize, petitioner fails to show that any plea bargain was actually offered to him by counsel, at a time before he was able to view the videotape.  And, as noted above, the court's underlying file indicates otherwise, that no plea bargain was offered to him at all before he was able to view the videotape.  Nor does he show that he was unaware of the breadth of evidence against him at any time thereafter when he resumed representation by counsel, such that seeing the videotape would have made any difference in his choice not to accept any purported proffered bargain.  As such, petitioner fails to set forth a prima facie case for relief, requiring denial of the petition.  (In re Bower (1985) 38 Cal.3d 865; In re Swain (1949) 34 Cal.2d 300; In re Harris (1993) 5 Cal.4th 813, 827 fn. 5).

(Resp't's Lod. Doc. 5 at 2-3.)

On October 28, 2010, petitioner filed a petition for writ of habeas corpus in the California Court of Appeal for the Third Appellate District, presenting the same ineffective of counsel claim that he had raised in the Sacramento County Superior Court.  (Resp't's Lod. Doc. 6.)[7]  However, petitioner attached several exhibits to the petition he filed in the state appellate

---

[7]  Specifically, in his habeas petition filed with the California Court of Appeal petitioner alleged as follows.  At his initial arraignment the prosecutor made a plea offer of four years in prison, which required him to plead guilty to robbery.  (Resp't's Lod. Doc. 6 at consecutive page 3.)  Petitioner told his trial counsel he wanted to review the surveillance videotape before accepting the offer.  (Id.)  Counsel showed petitioner part of the videotape, but was "pressed for time" and left before petitioner could view the entire videotape.  (Id.)  Counsel promised to bring the videotape back for a second viewing but failed to do so.  (Id.)  Petitioner stated that if he had been able to view the entire videotape, he would have accepted the four year plea offer, "even if that offer had legally been to a 2nd degree robbery."  (Id. at consecutive pages 3 & 10.)  Petitioner also claimed that his trial counsel told him "'he assumed' the offer to be, low-term, 2nd degree robbery.  Doubled by strike prior - when we now know that could not have legally been the offer of plea; the statute P.C. 667 ["A" thru "G"] (sic) prohibits that variation of conviction and prior to a sentence of '4' years."  (Id. at consecutive page 59.)  Petitioner further argued that he had "come to believe" that "the pro-offered plea of '4' years necessarily had to be

14

court that he had not attached to the habeas petition filed in the Sacramento County Superior Court, in an apparent attempt to establish when the prosecutor's plea offer was actually conveyed to him.[8]  As noted, the California Court of Appeal summarily denied petitioner's application for habeas relief by order dated November 4, 2010.  (Resp't's Lod. Doc. 7.)

Petitioner subsequently filed a petition for writ of habeas corpus in the California Supreme Court, raising the same ineffective assistance claim, to which he attached the same additional exhibits that were included in his habeas petition filed in the California Court of Appeal.  (Resp't's Lod. Doc. 8.)  As noted, on May 18, 2011, that petition was also summarily denied.  (Resp't's Lod. Docs. 8, 9.)

### 3. **Correct Standard of Review under AEDPA**

Respondent argues that under AEDPA the California Supreme Court's summary denial of petitioner's claim of ineffective assistance of counsel is the relevant decision for purposes of this court's review of petitioner's claim.  Respondent reasons that the addition of additional exhibits to the habeas petition filed by petitioner in the California Supreme Court changed the nature of his ineffective assistance of counsel claim.  (Doc. 28 at 9.)  In other words, respondent argues that the "look through" doctrine described in Ylst v. Nunnemaker, 501 U.S. 797, 806 (1991), does not apply in this case because petitioner's ineffective assistance of counsel claim submitted to the California Supreme Court was essentially a "new" claim by virtue of the inclusion of the additional exhibits in support thereof.  Respondent cites no authority in support

---

to that of the lessor included offense to robbery - which would be 'contrary to the assumptions' of my appointed counsel, Mr. James Warden."  (Id.)  Petitioner stated that because his trial counsel did not correctly convey the prosecution's offer to him, that offer expired without a response and he lost the opportunity to accept it.  (Id..)  Petitioner also argued in that petition that his trial counsel's defective advice placed him "in jeopardy of receiving a conviction of a strikeable offense 'robbery' in lieu of a non-strikeable offense of grand theft" and "causing [him] further jeopardy of receiving a 'seventeen' year sentence as opposed to a 'four' year sentence."  (Id. at consecutive pages 59-60.)

[8]  Those documents consist of various transcripts of state court proceedings and several decisions of the Sacramento County Superior Court denying petitioner's requests for copies of additional transcripts of proceedings in his case.  (Id.)

1   this contention, nor does he explain why or how the additional exhibits attached to petitioner's

2   habeas petition filed in the California Supreme Court changed the nature of his ineffective

3   assistance of counsel claim petitioner raised in the Sacramento County Superior Court.

4          The Ninth Circuit has recently addressed the "look through" doctrine.  In

5   Williams v. Cavazos, 646 F.3d 626 (9th Cir. 2011), the petitioner filed an unsuccessful appeal

6   from her conviction in the California Court of Appeal, raising a Sixth Amendment claim.  Id. at

7   635.  The California Supreme Court subsequently granted a petition for review and remanded the

8   matter back to the California Court of Appeal.  Id.  The state appellate court then issued a second

9   decision addressing petitioner's Sixth Amendment claim.  Id.  Petitioner filed a second petition

10  for review in the California Supreme Court, which was summarily denied.  Id.  Petitioner then

11  filed a federal habeas petition, once again raising her Sixth Amendment claim.  Id.  A threshold

12  question presented in Williams was "which state court 'decision' we review" for purposes of

13  AEDPA analysis.  Id.

14         The Ninth Circuit in Williams first noted that "[i]t has long been the practice of

15  federal habeas courts to "look through" summary denials of claims by state appellate courts and

16  review instead the last reasoned state-court decision."  Id. at 635 (quoting Ylst, 501 U.S. at 806).

17  However, the court questioned whether, and to what extent, this practice was still appropriate

18  after the decision in Harrington v. Richter, 562 U.S.___, ___,131 S. Ct. 770, 786 (2011)  In

19  Richter, the United States Supreme Court concluded that summary denials of habeas petitions

20  filed in the California Supreme Court should be considered adjudications "on the merits" of a

21  petitioner's claim for purposes of AEDPA.  Richter, 131 S. Ct. at 784-85.  The court in Williams

22  then questioned whether, in light of that conclusion reached in Richter, the "look through"

23  doctrine still applied in cases where the petitioner's claim had been filed in the California

24  Supreme Court by way of habeas corpus petition.  However, the court in Williams decided to

25  nonetheless apply the "look through" doctrine in that case because the petitioner's claim had

26  been presented to the California Supreme Court in a discretionary petition for review instead by

16

way of a habeas corpus petition.  646 F.3d at 635.

The Court in <u>Williams</u> explained its reasoning as follows:

It has long been the practice of federal habeas courts to "look through" summary denials of claims by state appellate courts and review instead the last reasoned state-court decision.  <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 806, 111 S. Ct. 2590, 115 L. Ed.2d 706 (1991); <u>see</u>, <u>e.g.</u>, <u>Kennedy v. Lockyer</u>, 379 F.3d 1041, 1052 (9th Cir.2004).  Following the Supreme Court's decision in <u>Harrington v. Richter</u>, ___ U.S. ___, 131 S. Ct. 770, 178 L. Ed.2d 624 (2011), we continue to adhere to that practice, at least with respect to cases in which state courts of last resort have exercised their discretionary authority to deny petitions for review.  In <u>Richter</u>, the Court held that summary denials of *original* petitions for habeas corpus filed in the Supreme Court of California should "be presumed" to be "adjudicated . . . on the merits."  <u>Id.</u> at 784–785. The question in <u>Richter</u> arose because state habeas petitions in California are presented to the state supreme court as original petitions, rather than as requests for review of lower-court rulings denying relief; accordingly, the Supreme Court of California must actually adjudicate each habeas petition.  Noting that "the California Supreme Court disposes of . . . more than 3,400 original habeas corpus petitioner" [sic] each year, the <u>Richter</u> Court observed that "[t]he issuance of summary dispositions in many collateral attack cases can enable a state judiciary to concentrate its resources on the cases where opinions are most needed."  <u>Id.</u> at 784.  It thus determined that the summary nature of the court's disposition of its thousands of original habeas petitions in no way undermines any presumption that they are decisions on the merits. <u>Id.</u> at 784–785.

A state court's decision to deny *discretionary* review is entirely different.  On direct appeal of a decision by a state court of appeal in a non-capital case, the Supreme Court of California has the authority to choose whether or not to grant review.  <u>See</u> Cal. R. Ct. 8.500.  As when the United States Supreme Court denies a petition for certiorari, the California high court's decision to deny a petition for review is not a decision on the merits, but rather means no more than that the court has decided not to consider the case on the merits.  (citations omitted.)  That is, under California law, the state supreme court's discretionary denial of a petition for review is decidedly not a decision on the merits.  <u>Cf. Richter</u>, 131 S. Ct. at 785.  Accordingly, in this case, the Supreme Court of California's denial of Williams's second petition for review – seeking review of the California Court of Appeal opinion issued on remand from the Supreme Court of California – was not a decision on the merits. We therefore continue to "look through" the state supreme court's denial of discretionary review to the last reasoned state court decision, which here is the second California Court of Appeal opinion on Williams's direct appeal.

1    Id. at 634-35.  Other courts have noted the reasoning of Williams on this issue, but have

2    nevertheless elected to apply the traditional "look through" doctrine in those cases.  See e.g.

3    Salazar v. McEwen, No. CV 12-4071-PSG (PLA), 2012 WL 5381547, 5 (C.D. Cal. Oct. 11,

4    2012) (applying "look through" doctrine where petitioner  raised his claims in a full round of

5    state habeas petitions, but noting in a footnote that "although the [Williams v.] Cavazos court did

6    not in its holding expressly state that the "look through" doctrine was not applicable to summary

7    denials of habeas petitions, this Court nevertheless notes that even if it did not apply the "look

8    through" doctrine here and simply accorded AEDPA deference to the California Supreme

9    Court's summary denial of [petitioner's claims], the result would remain the same"); Harris v.

10   Long, No. CV 12-1349-VBF (PLA), 2012 WL 2061698 (C.D. Cal. May 10, 2012) (same).

11           Here, as explained above, petitioner filed a habeas petition in the California

12   Supreme Court, raising his claim of ineffective assistance of trial counsel.  Assuming arguendo

13   that this is the operative decision for review under AEDPA, either because it was an "original

14   petition" and therefore not subject to the "look through" doctrine, see Williams, 646 F.3d at 634-

15   35, or because it was a different claim than that raised by petitioner in the Sacramento County

16   Superior Court by virtue of the additional exhibits attached to the petition, this court must

17   conduct an independent review of the record with respect to petitioner's ineffective assistance of

18   counsel claim in order "to determine whether the state court clearly erred in its application of

19   Supreme Court Law."  Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).  See also Delgado

20   v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000) (in the absence of a reasoned decision by the state

21   court, "[o]nly by [an independent review of the record] may we determine whether the state

22   court's decision was objectively unreasonable.")   In conducting this review, this court must

23   "determine what arguments or theories . . . could have supported the state court's decision; and

24   then it must ask whether it is possible fairminded jurists could disagree that those arguments or

25   theories are inconsistent with the holding in a prior decision of this Court."  Richter, 131 S. Ct. at

26   786.

1      On the other hand, if the "look through" doctrine is applicable here, the decision

2   of the Sacramento County Superior Court is the operative decision to be reviewed.

3   See Shackleford v. Hubbard, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000) (district court "look[s]

4   through" unexplained California Supreme Court decision to the last reasoned decision as the

5   basis for the state court's judgment).   In that case, this court would be required to determine

6   whether the Superior Court's decision rejecting petitioner's ineffective assistance of counsel

7   claim is contrary to, or an unreasonable application of, clearly established federal law, or whether

8   it was based upon an unreasonable determination of the facts.   28 U.S.C. § 2254(d).

9      Regardless of which state court decision is the operative decision for review

10  under AEDPA, for the reasons set forth below, petitioner is not entitled to federal habeas relief.

11  Petitioner has failed to demonstrate that the decision of the state courts rejecting his ineffective

12  assistance of trial counsel claim is contrary to, or an unreasonable application of federal law

13  under any standard of review.   Accordingly, the pending habeas petition should be denied.

14              **4.  Legal Standards – Ineffective Assistance of Counsel**

15     To support a claim of ineffective assistance of counsel, a petitioner must first

16  show that, considering all the circumstances, counsel's performance fell below an objective

17  standard of reasonableness.  Strickland v. Washington, 466 U.S. 668, 687-88 (1984).   After a

18  petitioner identifies the acts or omissions that are alleged not to have been the result of

19  reasonable professional judgment, the court must determine whether, in light of all the

20  circumstances, the identified acts or omissions were outside the wide range of professionally

21  competent assistance.  Id. at 690; Wiggins v. Smith, 539 U.S. 510, 521 (2003).   The relevant

22  question under AEDPA "is not whether counsel's actions were reasonable, but whether there is

23  any reasonable argument that counsel satisfied Strickland's deferential standard.  Richter, 131 S.

24  Ct. at 778 -779.   When evaluating counsel's performance under the first step of Strickland,

25  federal courts must apply a strong presumption that counsel "rendered adequate assistance and

26  made all significant decisions in the exercise of reasonable professional judgment."  Strickland,

466 U.S. at 690.

Second, a petitioner must establish that he was prejudiced by counsel's deficient performance. Strickland, 466 U.S. at 693-94. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.

These Strickland standards apply to claims of ineffective assistance involving counsel's advice offered during the plea bargain process, including plea offers that lapse or are rejected. Missouri v. Frye, ___ U.S. ___, 132 S. Ct. 1399 (2012); Lafler v. Cooper, ___ U.S. ___, 132 S. Ct. 1376 (2012); Padilla v. Kentucky, 559 U.S. ___, 130 S. Ct. 1473 (2009); Hill v. Lockhart, 474 U.S. 52, 58 (1985); Nunes v. Mueller, 350 F.3d 1045, 1052 (9th Cir. 2003). "During plea negotiations defendants are 'entitled to the effective assistance of competent counsel.'" Lafler, 132 S. Ct. at 1384 (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). As a general rule, "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." Frye, 132 S. Ct. at 1408. Trial counsel must also "advise a client to enter a plea bargain when it is clearly in the client's best interest." United States v. Leonti, 326 F.3d 1111, 1117 (9th Cir. 2003).

"A defendant has the right to make a reasonably informed decision whether to accept a plea offer." Turner v. Calderon, 281 F.3d 851, 880 (9th Cir. 2002) (citations omitted). Trial counsel must give the defendant sufficient information regarding a plea offer to enable him to make an intelligent decision. Id. at 881. "[W]here the issue is whether to advise the client to plead or not 'the attorney has the duty to advise the defendant of the available options and possible consequences' and failure to do so constitutes ineffective assistance of counsel." United States v. Blaylock, 20 F.3d 1458, 1465 (9th Cir. 1994) (quoting Beckham v. Wainwright, 639 F.2d 262, 267 (5th Cir.1981)).

1    However, counsel is not "required to accurately predict what the jury or court

2 might find." Turner, 281 F.3d at 881.  See also McMann, 397 U.S. at 771 ("uncertainty is

3 inherent in predicting court decisions.").  Nor is counsel required to "discuss in detail the

4 significance of a plea agreement," give an "accurate prediction of the outcome of [the] case," or

5 "strongly recommend" the acceptance or rejection of a plea offer.  Turner, 281 F.3d at 881.

6 Although counsel must fully advise the defendant of his options, he is not "constitutionally

7 defective because he lacked a crystal ball."  Id.  The relevant question is not whether "counsel's

8 advice [was] right or wrong, but . . . whether that advice was within the range of competence

9 demanded of attorneys in criminal cases."  McMann, 397 U.S. at 771.

10    In order to show prejudice in the context of plea offers, "a defendant must show

11 the outcome of the plea process would have been different with competent advice."  Lafler, 132

12 S. Ct. at 1384.  In cases where trial counsel's defective advice caused the defendant to reject a

13 plea offer and proceed to trial, prejudice is demonstrated where "but for the ineffective advice of

14 counsel there is a reasonable probability that the plea offer would have been presented to the

15 court (i.e., that the defendant would have accepted the plea and the prosecution would not have

16 withdrawn it in light of intervening circumstances), that the court would have accepted its terms,

17 and that the conviction or sentence, or both, under the offer's terms would have been less severe

18 than under the judgment and sentence that in fact were imposed."  Id. at 1385.[9]

19 ────────────────

20    [9] Respondent argues that the holding in Lafler does not apply to this court's analysis of
petitioner's ineffective assistance of counsel claim because Lafler had not been decided at the
21 time of the state court decisions on petitioner's claim and was not "clearly established" federal
law for purposes of AEDPA.  See 28 U.S.C. § 2254(d)(1).  The court rejects this argument.  Even
22 before Strickland, the United States Supreme Court had established that defendants are entitled to
effective assistance of competent counsel during plea negotiations.  Lafler, 132 S. Ct. at 1384
23 (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)).  In Lafler itself the court held that
the state court's decision under review was "contrary to clearly established law" under AEDPA.
24 132 S. Ct. at 1390.  See Buenrostro v. United States, 697 F.3d 1137, 1140 (9th Cir. 2012)
("[N]either Frye nor Lafler . . . decided a new rule of constitutional law.  The Supreme Court in
25 both cases merely applied the Sixth Amendment right to effective assistance of counsel
according to the test articulated in [Strickland], and established in the plea-bargaining context in
26 [Hill].")  Accordingly, courts have applied the holding in Lafler to federal habeas petitions
claiming ineffective assistance of counsel in the plea bargain context that were filed prior to the

5. <u>Analysis</u>

Petitioner is not entitled to federal habeas relief on his claim of ineffective assistance of counsel because he has failed to demonstrate that his trial counsel's advice regarding the plea offer made to him fell below an objective standard of reasonableness.  It is uncontested that petitioner's trial counsel did in fact convey to him a prosecution plea offer under which petitioner would plead guilty to robbery and admit a prior strike offense as alleged pursuant to California Penal Code § 667(b)-(i) and receive a sentence of four years in state prison.  Throughout his filings in this court as well as in the state courts petitioner has repeated a consistent refrain - his counsel erred in communicating this early plea offer to him because, as reported, it called for the imposition of a sentence tat would have been inconsistent with California law.  Petitioner is wrong.  The offer relayed to petitioner by his trial counsel, as described by him at the <u>Marsden</u> hearing, was consistent with the charges and proceedings then pending against petitioner.  All evidence of record points to the fact that the offer was exactly as conveyed to petitioner by his counsel.

The felony complaint filed on June 26, 2007, charged petitioner with one count of second degree robbery, a serious felony for purposes of California's Three Strikes Law, with a prior strike conviction pursuant to California Penal Code § 667(b)-(i).[10]  (Resp't's Lod. Doc. 10 at 25-26.)  Under California Penal Code § 213(a)(2), the low term sentence for second degree robbery is two years, which would have been doubled to a total of four years in light of the prior

date of the <u>Lafler</u> decision.  <u>See</u>, <u>e.g.</u>, <u>Johnson v. Uribe</u>, 682 F.3d 1238 (9th Cir. 2012), amended 700 F.3d 413 (9th Cir. 2012).

   [10]  On January 7, 2008, following his preliminary hearing and the court's holding order the complaint was deemed to be an Information.  (Clerk's Transcript on Appeal (hereinafter "CT" at 25.)  This was long after the four-year prison term plea bargain offer (referred to and summarized at the November 7, 2007 <u>Marsden</u> hearing) had been rejected by petitioner.  It was not until May 22, 2008, that an Amended Information was filed by the prosecution thereby adding a number of prior conviction/enhancement allegations, including that brought pursuant to California Penal Code § 667(a), and significantly increasing petitioner's potential exposure.  (<u>See</u> CT 151-53.)  Just prior to trial a Second Amended Information was filed, again setting forth all of the additional prior conviction/enhancement allegations.  (CT 197-99.)

22

strike offense alleged pursuant to California Penal Code §§ 667(b) - (i) and 1170.12.  It was not until May 22, 2008, long after that plea offer was rejected by petitioner, that the Information charging him was amended to include the prior serious felony allegation under California Penal Code § 667(a), which triggered the potential for an additional five year prison term.  (Resp't's Lod. Doc. 10 at 18, 151-53; Resp't's Lod. Doc. 11 at 464; Resp't's Lod. Doc. 13 ad 382-83.)  What petitioner does not take into consideration is the fact that California Penal Code § 1170(e) requires that "[a]ll enhancements shall be alleged in the accusatory pleading and either admitted by the defendant in open court or found to be true by the trier of fact."  The five-year enhancement under § 667(a), about which petitioner now claims confusion and upon which he basis his claim of ineffective assistance, was not even charged against him until long after he rejected the plea bargain offer of four years in state prison.  Therefore, any fear on petitioner's part of receiving that five-year enhancement could not have been the basis for his decision to reject the plea offer that had been made to him and likewise cannot serve as any ground upon which to claim ineffective assistance.

        In claiming that his counsel provided ineffective assistance, petitioner simply assumes that his trial counsel mis-conveyed the prosecution's plea offer to him and then speculates as to what the actual plea offer probably was.  Petitioner has created a "house of cards" by fabricating a plea offer he would have liked to have received (to a non-strike offense) and then, claiming that he would have accepted such a plea offer if it had been conveyed to him by his attorney.  However, there is absolutely no evidence before this court that petitioner was ever offered the plea bargain he now describes.  Rather, such a plea offer has been conjured up by petitioner based purely on his own misguided speculation.  Simply put, there is no competent evidence before this court that petitioner's trial counsel incorrectly conveyed the prosecution's plea bargain offer calling for a four year prison term to petitioner.  Under these circumstances, petitioner has simply failed to demonstrate defective performance by his trial counsel.

/////

1        Petitioner has also failed to demonstrate prejudice with respect to this claim.

2   There is no evidence before this court suggesting that petitioner would have accepted the plea

3   offer actually made by the prosecutor and explained by petitioner's trial counsel at the <u>Marsden</u>

4   hearing in state court.  On the contrary, petitioner effectively rejected that offer by failing to

5   accept it before it expired and was withdrawn.  Nor is there any competent evidence in the record

6   that petitioner rejected the four-year prison term plea bargain because it included the promise of a

7   sentence that was illegal under California law.  Rather, the record suggests that petitioner was

8   made aware of the terms of the plea offer being made in his case in an accurate fashion and

9   allowed that offer to lapse while attempting to arrange another viewing of the videotape evidence

10  provided in discovery because he did not like the terms of the offer being made.  Under these

11  circumstances, petitioner has failed to make any showing that "the outcome of the plea process

12  would have been different with competent advice." <u>Lafler</u>, 132 S. Ct. at 1384.[11]

13       In sum, petitioner has failed to show that his trial counsel rendered ineffective

14  assistance in connection with the plea offer made by the prosecution to him prior to trial, or that

15  he suffered prejudice from the actions of his trial counsel in conveying that offer to him.  The

16  state court decisions to the same effect are neither an unreasonable application of clearly

17  established Federal law nor based upon on an unreasonable determination of the facts.

18  Accordingly, petitioner is not entitled to federal habeas relief with respect to his ineffective

19  assistance of counsel claim.

20  **III.  <u>Motion to Expand the Record</u>**

21       On May 11, 2012, petitioner filed a motion to expand the record in this case to

22  include his letters written to the prosecutor and trial judge, and transcripts from unexplained

23

24       [11] No doubt, in retrospect and in light of the seventeen year prison sentence he ultimately
25  received, petitioner wishes that had instead accepted the legitimate four-year prison term plea
    bargain that was offered him to resolve the case at an early stage.  However, the record before
26  this court contains nothing suggesting that his failure to do so can be ascribed to any aspect of his
    trial counsel's performance.

"earlier proceedings." (Doc. 30.)[12]  Although petitioner lists the dates of the state court proceedings he now wants transcribed, he does not explain the nature of those proceedings nor their specific relevance to the resolution of the claim presented here.  (Id. at 2.)  Petitioner has attached to his motion to expand the record several decisions by the Sacramento County Superior Court denying his requests for transcripts from both his trial proceedings and proceedings held in connection with his previous "strike" conviction.[13]  (Id. at 3-8.)  Petitioner states in general fashion that the transcripts he requested from the state courts would demonstrate his willingness to accept a plea offer, the trial court's willingness to accept such an offer, and "a more vivid picture of totality of circumstances."  (Id. at 2.)  Respondent argues that petitioner's request to expand the record is precluded by the Supreme Court's decision in Cullen v. Pinholster, 563 U.S. ___, 131 S. Ct. 1388 (2011), and that petitioner has not shown good cause for expanding the record in any event.

         In Pinholster, the United States Supreme Court held that federal review of habeas corpus claims under § 2254(d)(1) is "limited to the record that was before the state court that adjudicated the claim on the merits."[14]  131 S. Ct. at 1398.  Therefore, evidence introduced at an evidentiary hearing in federal court may not be used to determine whether a state court decision on the merits of a petitioner's habeas claim violates § 2254(d).  Id.  Following the decision in Pinholster, the holding of an evidentiary hearing in a federal habeas proceeding is futile unless the federal habeas court has first determined that the state court's adjudication of the petitioner's

---

[12]  One of the letters requested by petitioner is attached as an exhibit to his motion to expand the record. (Id. at 10-11.)  Accordingly, his request with respect to that letter is moot.

[13]  In denying those requests, the Sacramento County Superior Court advised petitioner that he could obtain the transcripts from his appellate counsel, that he was not entitled to another free copy of the transcripts from the court, and that he had failed to demonstrate a specific need for the transcripts he had requested.  (Id.)

[14]  Even where a claim for habeas relief is simply summarily denied by the state court on the merits without discussion or analysis, as was the case in Pinholster, the federal habeas court is still ordinarily limited to consideration of the record that was before the state court. 131 S. Ct. at 1402 ("Section 2254(d) applies even where there has been a summary denial.").

1  claims was contrary to or an unreasonable application of clearly established federal law, and

2  therefore not entitled to deference under § 2254(d)(1), or that the state court unreasonably

3  determined the facts based upon the record before it, and therefore deference is not warranted

4  pursuant to § 2254(d)(2).

5         Some courts have extended the reasoning of the Supreme Court in <u>Pinholster</u> to

6  find requests for discovery or to expand the record to be unwarranted in particular federal habeas

7  corpus proceedings.  <u>See</u> <u>e.g.</u>, <u>Runningeagle v. Ryan</u>, 686 F.3d 758, 773-74 (9th Cir. 2012)

8  (concluding that, under <u>Pinholster</u>, petitioner was not entitled to discovery); <u>Peraza v. Campbell</u>,

9  462 Fed. Appx. 700, 701, 2011 WL 6367663, 1 (9th Cir. 2011)[15] ("In summary, to the extent

10 Peraza seeks to expand the record through discovery and an evidentiary hearing, beyond what

11 was presented to the state court, we conclude that such relief is precluded by <u>Pinholster</u> . . . .").

12 In any event, whether or not the holding in <u>Pinholster</u> presents an impediment to expansion of the

13 record in federal habeas proceedings absent the preliminary finding that the decision of the state

14 court is not entitled to deference under § 2254(d)(1) or (2), here petitioner is not entitled to

15 expansion of the record to include the material that he seeks to present.

16        "Rule 7 of the Rules Governing § 2254 cases allows the district court to expand

17 the record without holding an evidentiary hearing."  <u>Cooper-Smith v. Palmateer</u>, 397 F.3d 1236,

18 1241 (9th Cir. 2005) (citing 28 U.S.C. foll. § 2254, R. 7).  However, before the record may be

19 supplemented with new evidence, a petitioner must make a showing meeting the same standard

20 that is required for an evidentiary hearing.  <u>Id.</u>  A district court presented with a request for an

21 evidentiary hearing must first determine whether a factual basis exists in the record to support a

22 petitioner's claims and, if not, whether an evidentiary hearing "might be appropriate."  <u>Baja v.</u>

23 <u>Ducharme</u>, 187 F.3d 1075, 1078 (9th Cir. 1999).  <u>See</u> <u>also</u> <u>Earp v. Ornoski</u>, 431 F.3d 1158, 1166

24

25       [15]  Pursuant to Ninth Circuit Local Rule 36-3, unpublished dispositions issued on or after
26 January 1, 2007, may be cited to the courts of the Ninth Circuit in accordance with Fed. R. App.
P. 32.1 but are not precedent.

1   (9th Cir. 2005); Insyxiengmay v. Morgan, 403 F.3d 657, 669-70 (9th Cir. 2005).

2          A petitioner requesting an evidentiary hearing must also demonstrate that he has

3   presented a "colorable claim for relief." Earp, 431 F.3d at 1167 (citing Insyxiengmay, 403 F.3d

4   at 670, Stankewitz v. Woodford, 365 F.3d 706, 708 (9th Cir. 2004) and Phillips v. Woodford,

5   267 F.3d 966, 973 (9th Cir. 2001)).  To show that a claim is "colorable," a petitioner is "required

6   to allege specific facts which, if true, would entitle him to relief." Schriro v. Landrigan, 550 U.S.

7   465, 474-75 (2007); West v. Ryan, 608 F.3d 477, 485 (9th Cir. 2010).  The standard this court

8   must apply to determine whether the facts alleged by petitioner would entitle him to relief is the

9   deferential standard of 28 U.S.C. § 2254.  Stanley v. Schriro, 598 F.3d 612, 624 (9th Cir. 2010).

10  See also Bracy v. Gramley, 520 U.S. 899, 904, 908-09 (1997) (in undertaking a determination on

11  whether discovery is appropriate, a court must consider the petitioner's claim and evaluate

12  whether "specific allegations before the court show reason to believe that the petitioner may, if

13  the facts are fully developed, be able to demonstrate that he is . . . entitled to relief."); Gonzalez

14  v. Knowles, 515 F.3d 1006, 1014 (9th Cir. 2008) (even assuming petitioner exercised due

15  diligence in state court in seeking to develop the factual basis for his claims, he was not entitled

16  to an evidentiary hearing in federal court because his allegations were grounded in speculation

17  and did not give rise to colorable claim for federal habeas relief).  Of course, habeas courts

18  should not permit a petitioner to "use federal discovery for fishing expeditions to investigate

19  mere speculation." Calderon v. United States Dist. Ct. for the Northern Dist. of Cal. (Nicolaus),

20  98 F.3d 1102, 1106 (9th Cir. 1996).  See also Rich v. Calderon, 187 F.3d 1064, 1067 (9th Cir.

21  1999) (quoting Aubut v. Maine, 431 F.2d 688, 689 (1st Cir. 1970) ("Habeas corpus is not a

22  general form of relief for those who seek to explore their case in search of its existence."))

23          Petitioner has failed to demonstrate good cause in support of his request to expand

24  the record in this habeas action to include the additional state court records he seeks.  The state

25  court transcripts that are listed in petitioner's motion to expand the record are not described in

26  any detail and petitioner does not explain, except in very vague terms, how those transcripts and

27

1  the letters he sent requesting those transcripts would support his claim of ineffective assistance of

2  counsel.  To the extent petitioner wishes to establish that he was willing to accept a plea offer, his

3  declaration already establishes that fact.  At least some of the transcripts petitioner now seeks

4  were already a part of the state court record and could have been obtained by petitioner from his

5  trial or appellate counsel.[16]

6          More importantly, this court has concluded that petitioner is not entitled to federal

7  habeas relief with respect to his claim that he received ineffective assistance of counsel.

8  Petitioner's claim that his trial counsel incorrectly described the plea bargain offered to him by

9  the prosecutor is unsupported.  Here, there is no specific fact alleged by petitioner which, if true

10 would entitled him to relief.  Because habeas relief petitioner is not warranted under § 2254(d),

11 petitioner's request to expand the record in this case will be denied.  See Kemp v. Ryan, 638 F.3d

12 1245, 1260 (9th Cir. 2011) ("Moreover, Kemp's claim of a jail-wide policy of eliciting

13 incriminating statements has many of the indicia of an improper "fishing expedition," and the

14 desire to engage in such an expedition cannot supply "good cause" sufficient to justify

15 discovery).

16                              **Conclusion**

17          Accordingly, for the foregoing reasons,

18          IT IS HEREBY ORDERED that petitioner's May 11, 2012 motion to expand the

19 record is denied.

20          IT IS HEREBY RECOMMENDED that petitioner's application for a writ of

21 habeas corpus be denied.

22          These findings and recommendations are submitted to the United States District

23 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

24 one days after being served with these findings and recommendations, any party may file written

25

26 _____
        [16]  In fact, petitioner has been so advised by the Sacramento County Superior Court.

1 objections with the court and serve a copy on all parties.  Such a document should be captioned

2 "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

3 shall be served and filed within fourteen days after service of the objections.  Failure to file

4 objections within the specified time may waive the right to appeal the District Court's order.

5 Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir.

6 1991).  In his objections petitioner may address whether a certificate of appealability should issue

7 in the event he files an appeal of the judgment in this case.  See Rule 11, Federal Rules

8 Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability

9 when it enters a final order adverse to the applicant).

10 DATED: December 13, 2012.

11

12

13 DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

14

15 DAD:8
galloway1464.hc

16

17

18

19

20

21

22

23

24

25

26

29